The next case you honor this morning is 22 1878 the United States versus Gary E Leach. Counsel? Good morning and may it please the court. I'm Chrissy D'Amaso and I represent the appellant Gary Leach. I'd like to reserve one minute for rebuttal. You may. Thank you. The district court incorrectly concluded that Mr. Courts are of course free to vary upward from the guidelines but only if some special characteristic attributable either to the offender or the offensive conviction serves to remove a given case from the mine run. This was a mine run case and as such Mr. Leach should have received a guideline sentence. The district judge shall remove this case from the mine run. This isn't a case where we've got no explanation of the upward variance. So the question then becomes what's what's what's wrong with the district court's explanation? Why doesn't it withstand scrutiny? Each of the four factors that the district court cited is either based on something that came from outside the record and in that respect I would specifically point the court to the first factor which was the sexually based trauma where the district court references recent research about PTSD that the government concedes was not within the record. And the other factors were accounted for the guidelines were inherent within the offense and the district court did not. The unusual power dynamic in this case was you could have a young man and an older woman you could you know that power dynamic and the way it operated in this case seemed to me on the facts to be absolutely unique to this situation. Initially I'll say that the government sentencing memo describes cyber stalking as being about power and control. Even from the government sentencing memo there's a recognition that that is what this crime entails. I also think that if you look at other cases... Excuse me counsel. With all due respect that strikes me as rather superficial. Sure cyber stalking is about power but the power dynamic in each situation is bound to be different. And the power dynamic in this particular situation was the district judge view. Striking. And having read the record I think I can understand why she felt it was striking. I don't think... Yeah go ahead. I think looking at the other cyber stalking cases that impression is simply not borne out. For example Ackle is a quite similar case where you again have in that case you actually have... I'm sorry counsel. Why does that matter? That we might think that other cases should have led the district court to another decision isn't really the test. As Judge Selya said district court gave very good reasons here. They are supported by the record. You say there's one piece of extra record evidence but I frankly think that that was just pretty much common sense. And so your argument cannot be based on comparison to other cases. It has to be based on what's unreasonable about the district court. Saying why this was not a mine run case. In order to determine to assess whether the district court was correct in finding that this was a mine run case we have to look at what the mine run is. I think that there are three potential things you can look at to determine what the mine run is. I think you can look at the statute which here the cyber stalking statute criminalizes a wide range of conduct some of which is much more extreme than what we have here. I think you can look at other cases and when you look at those other cases none of the factors cited by the district court take Mr. Leach's case outside of the mine run in comparison to what's happening in those cases. They all involve power dynamics, control, serious allegations. Let me say something that hasn't been mentioned. Judge Kelly, I'm looking at the addendum page 17 of the sentencing hearing, but she gave special consideration specifically to Jane Doe's statement of how she felt suicidal and all her reaction and the consequence of this. Isn't that sufficient for the variance? And again we're talking about, we're not talking about a huge, huge variance. This is a five month variance from the top of the sentencing range. Isn't that sufficient perhaps? So her, Judge Kelly's comments about Jane Doe's statements are inextricably linked to this out of record information about PTSD. She says based on these words of Ms. Doe, this is also on addendum 17 and 18, and what we know about post traumatic stress disorder. The government has conceded that this sort of recent research, the court is citing something specific that there's, in recent years researchers have learned more and more about the broad spectrum of chronic harm. The victim and the abuse here was really quite bad. If the victim said as a result, I was suicidal for a long time, what does PTSD have to do with this? Are you saying the district court erred in thinking she was credible in saying what she said? No, simply that the court's description of that factor is inextricably linked to out of record information. The way the district court is assessing... I don't think it's inextricably linked. That was your assertion. I just questioned it. I don't think it's inextricably linked. The victim was very compelling in her description of why she was suicidal and the utter destruction of her psychologically that happened here. It doesn't matter whether you put a PTSD label on it or not. If what she said is true, then that's a good reason. This court has also noted explicitly that cyber-stalking is an ugly crime. Mr. Leach took responsibility for his actions. He acknowledged the harm that he had caused. The fact that this cyber-stalking crime, like many others, is ugly does not take it automatically outside of the mind run. You're acclaiming ugliness and suicide? I think it was my opinion that cyber-stalking is an ugly crime, and it is. That's true of all cyber-stalking. But ugliness has many faces and many variations. As Judge Lynch is continually pointing out, what happened in this case, I can easily understand why a sentencing judge would regard as extreme, particularly the suicidal language. And I also am taken aback by your assertion that a judge is confined strictly to the four corners of the record. We expect judges to use their common knowledge and experience. If a judge were to say, I'm taking into account on this sentence the fact that this occurred during the time of the pandemic when society was under special constraints, no one would bat an eye at that, because that's common knowledge. And a judge is expected to take into account common knowledge. I think that Judge Kelly's remarks about PTSD fall somewhat in the same bucket. I would argue that the court's remarks go beyond what would be common knowledge. I also would just like to say there's... But let me add again, I'll give you one minute to continue. But still, forget the PTSD, but you still have a victim. And again, I have the experience of many cases where victims testify or you have different victims. There could have been a victim in this case that complained to the FBI, the person was indicted, no psychological trauma. But here we have a human person, a victim, and the judge, Judge Kelly, can't simply ignore that. That's in the record, those consequences. And again, this is a very, as I said, this is a very, very slight variance. Judge Kelly had ample leeway to probably even go upward even more, but she weighed that, and then she weighed... And she even said at the end of the sentence, she's weighing all the 35, 50, 30, 30 factors. She's considering mitigating evidence, she's considering aggravating evidence, she's considering taking the victim's situation. So again, I can't see where, again, there's an unreasonable sentence in the variance. I think when the conduct in this case, and including, which includes the impact on the victim, is compared to other cyber stalking cases, this case simply does not move outside the mine run. As to the other issues in my brief, I would like to rest on the arguments raised in my brief. The district court here gave a detailed and thoughtful explanation for what was, as Judge Helpe pointed out, a relatively small upward variance. I think the court's explanation as to why these four factors took the case out of the mine run were completely reasonable, not an abuse of discretion, certainly not a plain error. As to the sexual trauma issue, it was always the elephant in the room in this case that this isn't just a cyber stalking and threats case, it is a sex offense case. And I think Jane Doe A.'s very powerful victim statement brought that to the forefront, that this isn't just a case involving cyber stalking threats that have sexual content or threats of sexual actions. That, in fact, Jane Doe A. was forced by the defendant to do sexual things to her body, and that she suffered the types of trauma that come from that type of offense. And as the district court pointed out, that is unusual in a cyber stalking case that has no physical contact between the victim and the defendant. And actually, when you look at the guidelines, it's clear that the guidelines don't anticipate that without physical contact between the defendant and the victim that a defendant would suffer this type of personal physical sexual trauma that Jane Doe A. testified that she did experience. And she experienced not just once, but multiple times over 18 months of repeated contact and repeated sexual video calls that were coerced from her, and in which there were outrageous power dynamics in play where the defendant was denying the humanity of the victim and not just finding gratification from the forced sex acts, but actually finding gratification from the victim's suffering and the fact that the victim did not want to do those things that the defendant was forcing her to do. The defendant also made a notice argument in his opening brief, which I don't think he argued about here, but just briefly, there is no notice requirement for variances beyond avoiding unfair surprise as to the grounds for the variance, and there was none here. Every single one of these four grounds were obvious aggravating factors to be considered at sentencing, and if they weren't obvious enough from the facts of what the defendant did, they became obvious certainly when the government raised them in its own sentencing arguments before the defense made counter arguments and in Jane Doe A's victim impact statement, which came at the start of the first sentencing hearing. As I said before you exhaust your time, would you turn your attention to the challenge to the supervised release condition? My initial question is about the standard of review, because when I look at the transcript of the sentencing hearing, it appears to me that the defendant did raise a challenge to that condition at the final sentencing hearing before the judge imposed it. Do you agree with that? The defendant did make a general objection at the start of the second sentencing hearing. No, I'm talking about an objection to that supervised release condition, and I'm talking about toward the end of the final sentencing hearing. Correct. And there was even, yeah, go ahead. Counsel made a general objection based on a mistake about what the record showed. Counsel said the record doesn't show anything about contact with minors. The government corrected that misstatement about the record, and once corrected, the district court asked the defendant if he wanted to respond to that. And not only did the defendant not renew the general objection previously made or make anything resembling his specific appellate argument about the nature of the contact not being sexual, etc., but actually then went to make a scope argument that presumes that some condition relating to minors was justified. Now the question was just how broad it should be. I mean, in that circumstance, the district court could have only understood that the defendant was withdrawing the original general objection to the condition because the record, it was based on a misstatement of the record. And let me say this. The record is clear, and I believe there's no dispute that during the time of the cyberstalking with the victim, the defendant also had some contact with a minor. It was perhaps, there's no evidence that it was close to what or similar to what happened to the victim, but in that period, he was having access to minor through the Internet. That's correct. At this point, there's no- And that should be, under the law, or the case law you present in your brief, that should be sufficient for that condition. That's absolutely right. And let me also further ask. This is not a total prohibition. It's a condition that if he's going to have access with any minors in the future, he's going to notify probation beforehand. And if probation says no, he can still go to the district judge, to Judge Kelly again, and Judge Kelly can say yes, he can have. So it's not like this is the end of it forever, correct? Correct. The government agrees with both points that Judge Helpe just made. So to Judge Sellier's point, whether the court agrees it was forfeited or not doesn't ultimately make a difference because there was no reversible error here. What we have, we have a sex offense in which the record shows the defendant did make contact with a self-identified minor using the very same Instagram. And during the same period, he's using that account to stalk and harass both Jane Does, solicit sexual content from other females on Instagram. Then he contacts still other females on Instagram and exposes himself masturbating to them without their consent. Although this particular contact, as the defendant argues, may not show that it was sexual or abusive, that doesn't mean that risk wasn't present given the pattern of this defendant's behavior. With this very Instagram account, the government views that contact as indicative of grooming, that there was a risk there. And again, because this is a relatively weak constraint, it's a preapproval, not a bar. And assuming that he doesn't switch jobs or try to take on new activities involving direct contact with children on a regular basis, it's not even a condition that would be triggered very often. And then, of course, as Judge Kelly said, in imposing it, if it does prove to be a burden in some way, come back and seek modification. That's what I was going to ask. Once a person is on supervised release, contrary to the actual sentence when imposed that the judge can't modify it or change it, supervised conditions throughout the whole period can be modified. The defense attorney can file a motion, can you vacate that condition, can you modify it? So again, this is not the end of the world regarding that condition. Correct. If it proves to be more burdensome than it looks on its face, not only can he seek modification, but Judge Kelly indicated she'd be willing to entertain that, that we can come back and look at this later if it becomes a problem. Anything else, counsel? If the court has no further questions, the government will rest on its brief. I don't have any, let me, my colleagues have any other questions? I'm content. Okay. No, thank you. Okay, then Ms. DeMaso, you have one minute for rebuttal. And perhaps you might want to address the supervised release issue briefly. Thank you. Briefly on the supervised release issue, this court needs to look at the condition on its face to determine whether or not it is unduly restrictive, whether or not it was properly explained, and whether or not it was justified by the facts in this case. I would look to cases like Fay and Peraza Mercado, that this condition is simply not sufficiently justified by the facts in this case. We have a single instance where he exchanges a few words with someone who purports to be a 15-year-old. That's it. There's no sending of sexual material. There's no, like, indication that he's repeatedly contacting this person, trying to get more, trying to engage further. There's no request for anything from this person. It's simply a glancing contact on social media. There's no pattern of seeking out minors, trying to contact minors. Whether or not this condition can be modified in the future does not change the fact that it is currently not justified by the facts of the case, unduly restrictive, and broader than necessary. Okay, thank you. Is there anything, 30 seconds, you want to add to anything Ms. Eisenstadt may have added? About the supervised release? No, anything else. Very briefly on the notice, I just want to point out that this is a situation where the court had multiple interactions with the parties between the two sentencing hearings. That not only are there three months between the sentencing hearings, but also the court had the parties file reports. The court had the parties in for a status conference. The court received a motion from Mr. Leach asking to have the conference be done on video. And still at the second sentencing hearing, the court did not announce its intention to vary upwards before. Which you don't have to do that. Simply pointing out that part of what causes unfair surprise here is that the court points out some problems at the first sentencing hearing, but none of these issues. And then even at the second sentencing hearing, it does not alert the parties to this before imposing the upward variance. It asks the parties for argument first and then imposes its sentence, which includes the upward variance. Okay, thank you, both counsel.